IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVID HOLLOMAN a/k/a David Coles, )
 )
   Petitioner, )
 )
   v. ) C.A. No. 17-79 (MN)
 )
DANA METZGER, Warden, and )
ATTORNEYS GENERAL OF THE STATE )
OF DELAWARE, )
 )
   Respondents. )

## MEMORANDUM OPINION[1]


David Holloman. *Pro se* petitioner.

Andrew J. Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

March 23, 2020
Wilmington, Delaware

---

[1] This case was re-assigned from the Honorable Gregory M. Sleet's docket to the undersigned's docket on September 20, 2018.

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner David Holloman ("Petitioner"). (D.I. 3). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 30; D.I. 36). For the reasons discussed, the Court will deny the Petition.

## I. BACKGROUND

### A. Factual Background

As set forth by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading up to his arrest, convictions, and sentences are as follows:

> On the morning of January 10, 2003, [Petitioner] noticed a package in the alley adjoining the house where he lived, in Wilmington, Delaware. [Petitioner] retrieved the package (which contained marijuana and cocaine), and brought it inside his home. Sometime later, Aaron Fairley ("Fairley") knocked on [Petitioner's] door, and accused [Petitioner] of stealing his drugs. [Petitioner] handed the drugs to Fairley, who then walked away from [Petitioner's] residence.
>
> Moments later, [Petitioner] also walked out of his residence and heard Fairley yelling to others on the street that [Petitioner] had "stolen [his] package [and that] [Fairley] should bust [Petitioner] in the face." An argument between Fairley and [Petitioner] then ensued. According to [Petitioner], Fairley "never took his hand out of his pocket [which] in the streets . . . is a non-verbal [cue] for I have a weapon." At some point, [Petitioner] flinched, as if Fairley was about to hit him. [Petitioner] then backed away and flashed a semiautomatic gun he had under his waistband. Fairley saw the gun and started walking away while threatening [Petitioner] that he would return to "get [him] when the sun go[es] down." [Petitioner] testified that he then turned and began walking towards the car that was waiting for him. As he was proceeding towards the car, [Petitioner] heard a shot, to which he responded by firing his gun four times (presumably in the direction of the shot), while retreating to his home. Two of the four bullets hit Fairley, who died shortly afterwards.
>
> On January 15, 2003, five days after the shooting, the police interviewed Kimberly Brown Sudler ("Sudler"), who lived across

the street from [Petitioner's] home. Sudler had called the police because "[e]very day gunshots [had] been going off" on the block where she lived. Sudler was interviewed generally about incidents occurring on that block, but the subject of Fairley's homicide was also specifically discussed. Sudler stated:

> I seen them going in and out of that house, take off [. . .]. I didn't actually see them with the guns. I seen them out there. I seen Keith [Evans] throw something behind the wall, and he said something to the boys that's on the porch next door to the house that's for rent.
>
>      *       *       *
>
> The day of the homicide I heard the shots go off . . . I seen the boys run off the second porch. I seen them pass something to somebody else . . . I seen Keith [Evans] standing here . . . . I heard them say, "Get him out of here, get him out of here, get him out of here." And these boys [are] always on this porch . . . [A]nd the light-skinned boy . . . with a beard and grays going straight back, stocky, he was the one that passed something to Keith [Evans].

On May 31, 2005, [Petitioner] was indicted on charges of Murder in the First Degree, Possession of a Firearm During the Commission of a Felony, and Possession of a Deadly Weapon by a Person Prohibited. In October and November 2006, [Petitioner's] case was tried before a Superior Court jury. On October 17, 2006, a subpoena that had been issued to compel the appearance of Sudler (as a witness for the State) could not be served, because the address indicated on the subpoena was a vacant house.

On the first day of the trial (October 31, 2006), the prosecutor indicated that the State did not intend to call Sudler as a witness because they were unable to find her. On the second day of the trial (November 1, 2006), defense counsel indicated that he had prepared a subpoena for Sudler (as a defense witness) and that an investigator would attempt to find Sudler and serve her with the subpoena. On the third day of the trial, November 6, 2006, defense counsel informed the trial judge that the subpoena had been handed to Sudler's mother by the investigator, on November 3, 2006. The investigator believed that Sudler was residing at her mother's house, because from outside the house the investigator saw someone in the living room who matched the (oral) description of Sudler that defense counsel had provided to him-based on counsel's review of Sudler's videotaped statement to the police.

Because Sudler did not appear at the courthouse at the time and date indicated on the subpoena (November 6, 2006, at 9:00 a.m.), defense counsel asked the court to issue a bench warrant for Sudler's apprehension as a material witness for the defense. Alternatively, defense counsel requested that Sudler's videotaped out-of-court statement to the police be admitted into evidence under D.R.E. 807. The trial court summarily denied the request for a bench warrant, stating:

> [I]t appears that there was an attempt to serve a subpoena which was apparently unsuccessful. I'm not persuaded on the existing record that a basis exists for issuing an arrest warrant or capias to this witness at this time. If the defense is unable to serve a subpoena in a time which avoids unreasonable disruption of the trial, admissibility of her statement based on her alleged unavailability will be considered. If the defendant desires, I can address the issue on this basis [on November 8, 2006, the next trial day] or if efforts to subpoena her are still ongoing, later. And if . . . I proceed with that analysis, I may just listen to this tape or watch this tape to . . . [determine whether] there are two separate incidents mixed up.

On the fourth day of trial, November 8, 2006, the investigator testified about his efforts to locate Sudler. The investigator stated that based on his review of the videotape from the police station, the person he saw in the living room at Sudler's mother's house was Sudler. In light of the investigator's testimony, the Superior Court declared Sudler an "unavailable" witness under D.R.E. 804(a)(5). Later that same day, after reviewing the videotape, the trial court denied the application to have the videotape admitted into the evidence, holding that:

> I see that [Sudler] begins by describing an incident in which two men are shooting and four or five men are running. It becomes clear that this incident is different from the one which is later described as the homicide, which is the incident in this case. [. . .] Therefore, the first incident involving two men shooting would have to be redacted out anyway as irrelevant, intending to mislead the jury.
>
> As to the remainder, [Sudler]'s statement is no more probative on what occurred than the testimony of the witnesses who have already testified here in

> Court and doesn't tend to establish any new
> material fact. In addition, I am not persuaded that
> the statement is particularly reliable in the absence
> of an opportunity to have the witness cross-
> examined in Court to clarify what she says and I am
> not persuaded that admission of the videotape
> serves the purposes of the rules of evidence or the
> interest of justice. Therefore, the State's objection
> to the admission of the videotape is sustained.

*Coles v. State*, 959 A.2d 18, 19-22 (Del. 2008). On May 31, 2005, a Delaware Superior Court jury convicted Petitioner of second degree murder (as a lesser-included offense), possession of a firearm during the commission of a felony, and possession of a deadly weapon by a person prohibited. (D.I. 30 at 1). The Delaware Superior Court sentenced Petitioner to a total of thirty-eight years of incarceration, suspended after thirty-four years for descending levels of supervision. *Id.* at 1-2. The Delaware Supreme Court affirmed Petitioner's convictions and sentences on direct appeal. *See Coles*, 959 A.2d at 26.

### B. Post-Conviction Background

In May 2009, Petitioner filed in the Delaware Superior Court a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 30 at 2). The Superior Court denied the Rule 61 motion on February 29, 2012. (D.I. 28-14 at 72-78). Petitioner appealed, and the Delaware Supreme Court remanded the case on June 12, 2013 to the Superior Court for the appointment of counsel and reconsideration of the Rule 61 motion. (D.I. 28-19). S*ee Coles v. State*, 67 A.3d 1022 (Table), 2013 WL 2966637, at *1 (Del. June 12, 2013). Upon remand, the Superior Court appointed post-conviction counsel, who filed an amended Rule 61 motion on September 12, 2014. The Superior Court denied the amended Rule 61 motion on July 23, 2015 (D.I. 28-20 at 40-49), and the Delaware Supreme Court affirmed that decision in February 2016. (D.I. 28-27). *See Coles v. State*, 133 A.3d 558 (Table), 2016 WL 703128 (Del. Feb. 22, 2016).

While Petitioner's post-conviction appeal of the amended Rule 61 motion was pending, Petitioner filed a *pro se* motion to modify his sentence. (D.I. 28-1 at 24-25). The Superior Court denied the motion to modify on May 10, 2016, and the Delaware Supreme Court affirmed that decision in September 2016. *See Coles v. State*, 147 A.3d 234 (Table), 2016 WL 4581287 (Del. Sept. 1, 2016). On September 13, 2015, Petitioner filed a second Rule 61 motion. The Superior Court denied his second Rule 61 motion (D.I. 28-33 at 52-53), and the Delaware Supreme Court affirmed that decision in July 2017. *See Coles v. State*, 169 A.3d 858 (Table), 2017 WL 3259697 (Del. July 31, 2017); (D.I. 38-38).

## II.    GOVERNING LEGAL PRINCIPLES

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.    Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts.  *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989).  Although treated as technically exhausted, such claims are nonetheless procedurally defaulted.  *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).  Federal courts may not consider the merits of procedurally defaulted claims

unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that the errors at his trial [] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982). If a petitioner attempts to excuse his default on the basis of ineffective assistance of counsel, he can satisfy the prejudice component of the "cause and prejudice" standard by meeting the prejudice standard needed to establish ineffective assistance of counsel under *Strickland*. *See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C.  Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law.  *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court

---

[2]     A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

decision contradicts them." *Id.* In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner's timely filed habeas Petition contains twenty-five claims for relief, including allegations of trial court errors, ineffective assistance of trial and appellate counsel, and cumulative error. For the reasons that follow, the Court concludes that none of the claims warrant relief.

### A.   Claims One and Two: Prosecutorial Misconduct

In Claims One and Two, Petitioner asserts that the State engaged in prosecutorial misconduct by: (1) failing to test the victim's hands for gunshot residue; and (2) knowingly using the "perjured" testimony of Tyrone Bailey to obtain a conviction. Petitioner did not present these two claims to the Delaware Supreme Court in his direct appeal. Moreover, even though Petitioner raised these arguments in his first *pro se* Rule 61 motion and post-conviction appeal, the Delaware Supreme Court remanded the case back to the Superior Court without addressing

the merits of the arguments. Petitioner did not re-raise the arguments in either his first amended Rule 61 motion or in his post-conviction appeal from the denial of that motion. Consequently, Petitioner has not exhausted state remedies for Claims One and Two.

At this juncture, any attempt by Petitioner to raise these claims in a Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and denied as procedurally defaulted under Rule 61(i)(3). *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014). In these circumstances, the Court must excuse as futile Petitioner's failure to exhaust state remedies, but still treat Claims One and Two as procedurally defaulted. Thus, the Court cannot review the merits of Claims One and Two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause by blaming appellate counsel's failure to raise the two claims in his direct appeal, and also by blaming post-conviction counsel's failure to include the two claims in his first amended Rule 61 motion and appeal from the denial of the first amended Rule 61 motion. After reviewing the record, the Court concludes that appellate counsel's failure to raise Claims One and Two on direct appeal cannot excuse Petitioner's default, because this particular allegation of ineffective assistance is itself procedurally defaulted. The Court also concludes that post-conviction counsel's failure to raise Claims One and Two in the amended Rule 61 motion and subsequent appeal cannot constitute cause because, once again, the issue is procedurally defaulted. These procedural default findings are based, in part, on the Delaware Supreme Court's application of the amended version of Rule 61(d)(2) when affirming the Superior Court's denial of his second Rule 61 motion. (D.I. 28-33 at 52-53). *See Coles*, 2017 WL 3259697, at *1-2. Given the myriad issues related to determining if the amended version of Rule 61(d)(2) constitutes an independent and adequate state procedural rule for

procedural default purposes,[3] the Court concludes that the interests of justice are best served in this instance by addressing the merits of Claims One and Two.

In his first claim, Petitioner contends that the State engaged in misconduct because the police did not test the victim's hand for gunshot residue. Petitioner asserts that this misconduct amounted to a due process violation that deprived him of his right to a fair trial.

Distilled to its core, Petitioner's argument appears to be that the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1986) by failing to preserve the gunshot residue. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[4] *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Under *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988), however, the failure by the police to preserve potentially useful evidence does not constitute a denial of due process unless the defendant can show bad faith on the part of the police. Here, Petitioner does not allege, and nothing in the record indicates, that the failure to preserve the gunshot residue was due to bad faith on the part of the police. In addition, Petitioner has not provided a credible basis to assert that evidence would have been exculpatory, much less material, if it had been preserved. Given these circumstances,

---

[3]     Rule 61(d)(2) was amend in June 2014, and the Superior Court applied the amended version of Rule 61(d)(2) to the Rule 61 motion Petitioner filed in September 2016. *See Coles*, 2017 WL 3259697, at *1. Whether or not the 2014 amended version of Rule 61(d)(2) constitutes an independent and adequate state procedural rule for procedural default purposes is an issue not yet decided in this Court. Therefore, in an effort to promote efficiency and justice, the Court will proceed to the merits of the instant Claims.

[4]     A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

Petitioner's contention that the State violated his due process rights by failing to test the victim for gunshot residue lacks merit.

Claim Two, which asserts that the State committed prosecutorial misconduct by knowingly using the perjured testimony of Tyrone Bailey, fares no better. Bailey gave police an eyewitness statement a few days after the homicide. Two months prior to trial, the State sent the defense *Brady* material informing the defense by letter that Bailey now claimed that his statement had been based on what he had been told to say by Keith Evans. During the trial, the State put Bailey on the witness stand to testify about his statement, but never presented the *Brady* evidence of recantation to the jury. Bailey's testimony was consistent with his police statement.

In order to succeed on this theory of prosecutorial misconduct, Petitioner must demonstrate: (1) Bailey committed perjury; (2) the State knew or should have known of Bailey's perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict. *See Lambert,* 387 F.3d at 242. "Perjury is the willful, knowing and corrupt giving, under oath, of false testimony material to the issue or point of inquiry." *United States v. Rose*, 215 F.2d 617, 622-23 (3d Cir. 1954). Although Bailey recanted his statement to the police prior to trial, Petitioner cannot establish that Bailey committed perjury during the trial. Bailey's testimony was consistent with his initial statement to the police, and his initial statement was corroborated by the testimony provided by other witnesses. Thus, there is no indication that the State presented false or perjured testimony.

Accordingly, the Court will deny Claims One and Two as meritless.

### B. Claims Three and Four: Missing Evidence Instruction/Clarification of Statute

In Claim Three, Petitioner contends that the Superior Court abused its discretion by failing to *sua sponte* give a missing evidence instruction to the jury regarding the police failure to

test the victim's coat for gunshot residue. In Claim Four, Petitioner asserts that the Superior Court erred by instructing the jury that they were to give words not defined by state statue ("cruel," "wicked," and "depraved") their commonly accepted meanings.

It is well-established that "[s]tate courts are the ultimate expositors of state law,"[5] and claims based on errors of state law are not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Claims involving jury instructions in state criminal trials are matters of state law, and generally, are only cognizable on federal habeas review if the instructions are so fundamentally unfair that they deprive the petitioner of a fair trial and due process. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Even a jury "instruction [that] was allegedly incorrect under state law" will only provide a basis for habeas relief if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001); *see Estelle*, 502 U.S. at 71-72 ("[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."). For instance, a "jury instruction that omits or materially misdescribes an essential element of the offense as defined by state law relieves the state of its obligation to prove facts constituting every element of an offense beyond a reasonable doubt, thereby violating the defendant's federal due process rights." *Smith v. Horn*, 120 F.3d 400, 415 (3d Cir. 1997).

Petitioner has not demonstrated that a missing evidence instruction was required under state law or that the Superior Court was required to clarify terms that are not defined by state statute. In addition, Petitioner has not demonstrated that the lack of a missing evidence instruction or the lack of an instruction defining certain terms deprived him of a defense

---

5       *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

provided to him under federal or constitutional law. Thus, the Court will deny Claims Three and Four for failing to present issues cognizable on federal habeas review.

### C.    Claim Five:  Failure to Issue a Bench Warrant

Next, Petitioner asserts that the Superior Court violated his right to compulsory process by failing to issue a bench warrant to compel the appearance of Kimberly Brown Sudler. Petitioner presented this argument to the Delaware Supreme Court on direct appeal, which held that "the Superior Court did not abuse its discretion or infringe [Petitioner's] Sixth Amendment right to compulsory process in refusing to issue a material witness warrant. *See Coles*, 958 A.2d at 24. Therefore, Claim Five will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

A criminal defendant has the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Because this right is made applicable to the States through the Fourteenth Amendment, a violation of the right also constitutes a violation of due process. *See Washington v. Texas*, 388 U.S. 14, 17-19 (1967). The right to present witnesses and evidence, however, "is not absolute." *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 445 (3d Cir. 1992). The right to compulsory process only extends to evidence that is material and favorable to the defense. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982); *Mills*, 956 F.2d at 446. Evidence is material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Valenzuela*, 458 U.S. at 874. A reasonable likelihood is "a probability sufficient to undermine confidence in the outcome." *Mills*, 956 F.2d at 446. A criminal defendant establishes that his right to compulsory process has been violated by showing: "(1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and

14

(3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purposes." *United States v. Cruz-Jiminez*, 977 F.2d 95, 100 (3d Cir. 1992).

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified and applied the relevant Supreme Court and Third Circuit cases when reviewing Claim Five. Consequently, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Moreover, the Court concludes that the Delaware Supreme Court's denial of the instant Claim did not involve an unreasonable application of clearly established federal law under § 2254(d)(1). When denying Petitioner's compulsory process argument, the Delaware Supreme Court explained:

> Here, [Petitioner] argues that Sudler was a "material" witness for the defense because, based on her videotaped statement to the police, Sudler's expected testimony would have been that: (a) two men were involved in the shooting in front of [Petitioner's] residence that resulted in Fairley's death, which would have corroborated [Petitioner's] testimony that he was acting in self-defense and would have contradicted the evidence presented by the State that only [Petitioner] had a gun; and (b) she saw Keith Evans ("Evans"), one of the State's witnesses, recover an item from Fairley and then throw something behind the wall, which would have explained why no guns or drugs were found on Fairley's person when the police arrived and would have "implicated [the] State's witness Evans in covering up the victim's activities after he was shot." In our view, the Superior Court correctly found that [Petitioner's] contention as to Sudler's expected testimony is not supported by the transcript of her videotaped statement to the police.
> Regarding the first point, Sudler never stated that she saw two men with guns on the day that Fairley was shot. Her statement about two men being involved in a shooting was in reference to another incident that took place on the same block a few days after Fairley's homicide. When asked specifically about the homicide, Sudler stated only that she "heard the shots go off," but not that she

witnessed the shooting. Sudler also stated that "I didn't actually see them with the guns." Therefore, Sudler would not have been able to corroborate [Petitioner's] testimony that both he and Fairley had guns.

With respect to the second point, Sudler did not tell the police that she saw Evans retrieve something from Fairley's body, or that Fairley passed something to Evans. Sudler stated that a "light-skinned boy . . . with a beard . . ., stocky, . . . passed something to Evans." The description of the "light-skinned boy" did not match the physical appearance of Fairley. Moreover, Sudler's account of what had happened is confusing because she also stated that she saw some "boys" who were sitting on a porch next to [Petitioner's] house run off when the shooting started and "pass something to somebody else." Finally, Sudler stated that she did not see what was passed, nor did she state what Evans threw "behind the wall." In conclusion, Sudler's testimony may have been relevant to a certain extent, but it was neither "material," nor necessarily "favorable" to the defense. Therefore, the Superior Court did not abuse its discretion or infringe [Petitioner's] Sixth Amendment right to compulsory process in refusing to issue a material witness warrant.

*Coles*, 959 A.2d at 23–25. When characterizing Sudler's statement as confusing, the Delaware Supreme Court explained that it was not clear if Sudler was referring to the homicide at issue in the trial or an incident that occurred a few days later. *Id.* at 24 & n.16. Considering the confusing nature of Sudler's statement in conjunction with the fact that Sudler never claimed to have actually witnessed the shooting, the Delaware Supreme Court reasonably found that Sudler's testimony would not have been material or favorable to Petitioner's defense. Accordingly, the Court will dismiss Claim Five because Petitioner has failed to show that the failure to compel Sudler's appearance violated his right to compulsory process.

**D.    Claim Six: Improper Evidentiary Ruling Regarding Sudler's Taped Statement**

The Supreme Court has repeatedly stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle*, 502 U.S. at 68.

As a general rule, the "admissibility of evidence is a state law issue,"[6] and state evidentiary errors are not cognizable in a federal habeas corpus proceeding unless the error deprived the petitioner of fundamental fairness in his criminal trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974). An error of state evidentiary law deprives a petitioner of fundamental fairness "if the probative value of evidence, although relevant, was greatly outweighed by the prejudice to the accused from its admission." *Albrecht v. Horn*, 485 F.3d 103, 122 n.6 (3d Cir. 2007). The improper exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *United States v. Scheffer,* 523 U.S. 303, 308 (1998).

In Claim Six, Petitioner contends that the trial court abused its discretion by mechanically applying Delaware Rule of Evidence 403 ("D.R.E.") and refusing to admit Sudler's prior recorded statement. Petitioner also includes a single sentence alleging that the trial court's exclusion of Sudler's statement violated his rights to due process and a fair trial. (D.I. 3 at 16).

Petitioner presented a similar, but not identical, argument to the Delaware Supreme Court on direct appeal: (1) the trial court should have admitted Sudler's videotaped statement under the residual hearsay exception, D.R.E. 807; and (2) the trial court's refusal to compel Sudler's appearance coupled with the exclusion of Sudler's videotaped police statement violated his Sixth Amendment right to present a defense. The Delaware Supreme Court rejected Petitioner's argument regarding D.R.E. 807, holding that the admission of Sudler's statement "would not have served the general purposes of the rules of evidence or the interests of justice, and the Superior Court properly exercised its discretion in declining to allow that statement to be admitted into evidence." *Coles*, 959 A.2d at 25. The Delaware Supreme Court explained:

---

[6]     *Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

[Petitioner] argues that the trial court should have allowed Sudler's videotaped statement to be shown to the jury, because that statement was admissible under D.R.E. 807, the residual exception to hearsay, which relevantly states:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule, if the court determines that: (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Here, as discussed above, the first requirement is not met, because Sudler's statement did not pertain to a "material fact." Sudler specifically stated that she did not see the homicide. Moreover, the Superior Court correctly concluded that the first portion of Sudler's statement described a shooting incident different than the one at issue in the present case, which would have confused and mislead the jury. Therefore, the admission of that statement would not have served the general purposes of the rules of evidence or the interests of justice, and the Superior Court properly exercised its discretion in declining to allow that statement to be admitted into evidence.[20]

*Coles*, 959 A.2d at 24–25.

To the extent Petitioner contends that the trial court violated the Delaware Rules of Evidence in refusing to admit Sudler's videotaped statement, he has presented an issue of state law error that is not cognizable on federal habeas review. As a result, the Court will deny the D.R.E. 807 argument for failing to assert a proper basis for federal habeas relief.

Petitioner's argument that the trial court's refusal to compel Sudler's appearance coupled with the exclusion of Sudler's videotaped police statement violated his Sixth Amendment right to present a defense fares no better. The improper exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *United States v. Scheffer,* 523 U.S. 303, 308 (1998). The Delaware Supreme Court rejected Petitioner's Sixth Amendment argument as meritless, "because he was given the opportunity to,

and did in fact, present the defense of justification that Sudler's testimony or her statements to the police would have allegedly supported." *Coles*, 959 A.2d at 24 n.19. The Delaware Supreme Court's rejection of Petitioner's constitutional argument regarding the exclusion of Sudler's recorded statement also rested in part on the state supreme court's determination that Sudler's recorded statement was not material or favorable.

In this proceeding, Petitioner has failed to demonstrate that the recorded statement was crucial to his conviction. As a result, under the state rules of evidence, Sudler's videotaped statement was properly excluded, the trial court did not commit an error of constitutional dimension, and a review of the whole record demonstrates that the trial was fundamentally fair. Therefore, the Court concludes that the Delaware Supreme Court's rejection of Claim Six was not contrary to, or involved an unreasonable application of, clearly established federal law.

### E.     Claims Seven and Eight:  Jury Instructions

In Claim Seven, Petitioner contends that the Superior Court violated his due process rights by refusing to give specific jury instructions addressing the State's burden to prove the absence of self-defense beyond a reasonable doubt. In Claim Eight, Petitioner argues that the Superior Court should have given a self-defense instruction related to the lesser-included charges of second degree murder and manslaughter.

As previously explained, questions relating to jury instructions generally are not cognizable on federal habeas review, because they are matters of state law. *See supra* at Section B. Petitioner presented Claims Seven and Eight to the Superior Court in his second Rule 61 motion. The Superior Court summarily denied the arguments under Rule 61(d)(2) and the Delaware Supreme Court affirmed that decision. *See Coles v. State*, 169 A.3d 858 (Table), 2017 WL 3259697, at *2 (Del. July 31, 2017).

The Court will not address whether Claims Seven and Eight are procedurally barred, because they do not warrant relief for a more basic reason: they assert an issue of state law. Under 11 Del. C. § 464, "[t]he use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion." 11 Del. C. § 464. Because self-defense is not an affirmative defense, a defendant is not required to prove such a claim by a preponderance of the evidence. *See State v. Norman*, 2013 WL 1090944, at *8 (Del. Super. Ct. Mar. 6, 2013). Rather, a defendant must produce "some credible evidence supporting the defense that is sufficient to create a reasonable doubt regarding his guilt." *Carter v. State*, 663 A.2d 486 (Table), 1995 WL 439234, at *4 (Del. July 18, 1005). It is ultimately within the discretion of the factfinder to accept or reject a defendant's claim of self-defense. *See Thomas v. State*, 692 A.2d 415 (Table), 1997 WL 45018, at *2 (Del. Jan. 16, 1997).

At the time Petitioner's case was tried, the prevailing view under state law was that the trial judge should not give a self-defense instruction to a charge that involved a reckless state of mind, which would have included second degree murder and manslaughter. *See State v. Fletcher*, 2015 WL 2438271, at *7 (Del. Super. May 19, 2015).

Contrary to Petitioner's assertions, the Superior Court provided the jury with a correct statement of state law that did not relieve the state of its obligation to prove facts constituting every element of the offenses beyond a reasonable doubt. *See Smith*, 120 F.3d at 415. Moreover, the Superior Court actually did instruct the jury on self-defense as to second degree murder and manslaughter. (D.I. 28-5 at 108). As Petitioner cannot demonstrate that Superior Court's instructions on self-defense were so fundamentally unfair that they deprived him of a fair trial and due process, the Court will deny Claims Seven and Eight for failing to present issues cognizable on federal habeas review.

**F.      Claims Nine -Eighteen:  Ineffective Assistance of Defense Counsel**

Two attorneys represented Petitioner during his criminal proceeding and direct appeal. (D.I. 28-22 at 378).  Defense counsel represented Petitioner during his trial and managed the pre-trial investigation.  (D.I. 28-22 at 379).  Appellate counsel represented Petition on appeal.  *Id*.  In Claims Nine through Eighteen, Petitioner contends that defense counsel provided ineffective assistance for nine different reasons.  Petitioner presented these Claims to the Delaware Supreme Court when he appealed the denial of his second Rule 61 motion.  (D.I. 30 at 24).  Although the Delaware Supreme Court affirmed the Superior Court's decision that the claims were barred under Rule 61(d)(2), which means that he procedurally defaulted the claims, the State nonetheless addresses the nine Claims on their merits.  Therefore, given the State's waiver of Petitioner's procedural default, the Court will proceed to the merits of the Claims as well.

The clearly established law governing the instant ineffective assistance of counsel claim is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Although a court may only grant relief for an ineffective assistance of counsel claim if both *Strickland* prongs are satisfied, a court may deny an ineffective assistance of counsel claim after determining the petitioner made an insufficient showing on just one prong.  *See Strickland,* 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or

sufficient prejudice defeats the ineffectiveness claim."); *see also United States v. Parker*, 621 F. App'x. 109, 110 (3d Cir. 2015) ("We need only negate one prong to reject a *Strickland* claim.").

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

### 1. Claim Nine: Defense counsel did not test for gunshot residue

In Claim Nine, Petitioner contends that defense counsel was ineffective for failing to have the victim's coat tested for gunshot residue because a gunshot residue test may have supported his justification defense ("self-defense"). The only evidence suggesting that the victim had a gun during the offense was Petitioner's own testimony, and three witnesses affirmatively testified that they did not see the victim with a gun. (D.I. 28-2 at 41, 50-51; D.I. 28-3 at 2). In the absence of a weapon to match, a test for firearm proximity through GSR could not have been performed on the victim's clothing. Moreover, the medical examiner testified that he did not notice any gunshot residue on the victim's hand during the post-mortem examination. Given the absence of any evidence other than Petitioner's self-serving statement, Petitioner's contention that testing the victim's clothing for gunshot residue may have supported his theory of self-defense is pure speculation. In short, Petitioner's speculative claim fails both prongs of *Strickland*.

### 2. Claim Ten: Defense counsel did not secure Sudler to testify

Next, Petitioner asserts that defense counsel provided ineffective assistance by failing to have Sudler testify at trial. This argument fails under both prongs of the *Strickland* test. First,

defense counsel's performance was not deficient because counsel tried, but failed, to secure Sudler's appearance at trial. In Petitioner's second Rule 61 proceeding, Defense counsel provided a Rule 61 affidavit, wherein he explained that he issued a subpoena for Sudler and had an investigator locate her, but she evaded service. (D.I. 28-22 at 382, 399). Defense counsel also explained the Superior Court refused his request for it to issue a bench warrant for Sudler. *Id*. Second, as previously explained, the Court concludes that the Delaware Supreme Court reasonably determined that Sudler's testimony was not material or necessarily favorable to the defense. *See supra* at Section C. Therefore, Petitioner cannot establish prejudice because he cannot demonstrate a reasonable probability that his trial would have ended in a different result but for counsel's failure to put Sudler on the witness stand.

### 3.      Claim Eleven: Counsel failed to secure unidentified witnesses

Evidence at trial showed that Petitioner fired four .45 caliber slugs at the victim, and the victim was struck in the back and side by two of the four rounds. (D.I. 28-5 at 108). During the trial, Petitioner testified that the victim shot at him first, and that he returned fire to defend himself. (D.I. 28-5 at 108).

In Claim Eleven, Petitioner contends that defense counsel failed to secure several unidentified eyewitnesses to the shooting he believes would have supported his theory of self-defense. In his Rule 61 affidavit, the defense counsel explained that he was unable to identify other eyewitnesses to the shooting. (D.I. 28-22 at 383). The record supports defense counsel's conclusion that there were no other eyewitnesses. For instance, the police interviewed eight witnesses, and all but two reported hearing only four shots. Only one witness, Carmen Gonzalez, reported hearing more than four gunshots to the police, and she testified at trial that she was "not really sure" about the number of shots she heard because she was sleeping at the time of the murder. In addition, the victim was found unarmed. (D.I. 28-5 at 108). In short, this

record does not support Petitioner's assertion that there were other unidentified eyewitnesses to the shooting that may have testified to hearing more than four shots. Therefore, he cannot demonstrate a reasonable probability that he would not have been convicted but for defense counsel's failure to have the unidentified witnesses appear and testify at trial.

### 4. Claim Twelve: Defense counsel failed to impeach Bailey and Evans

In Claim Twelve, Petitioner contends that defense counsel was ineffective for not impeaching Bailey and Evans on cross-examination. According to Petitioner, Evans and Bailey were friends and Evans told Bailey to lie about having witnessed the shooting; he asserts defense counsel should have exposed Bailey's perjury and Evans' bias. (D.I. 36 at 23; D.I. 28-20 at 7).

The following background information from Petitioner's Opening Brief in his first Rule 61 appeal provides helpful information for evaluating this Claim:

> **Keith Evans, eyewitness.**
>
> Keith Evans lived a couple of blocks away from [Petitioner] and knew him from a prior incarceration. He testified that he knew Mr. Fairley for ten years and that the two were "associates."
>
> On the day of the incident, Evans was returning from the store when he encountered Mr. Fairley on the street. People approached Mr. Fairley in a car looking for drugs. Evans testified that Mr. Fairley went into an alley to retrieve drugs. Mr. Fairley returned and told Evans his drugs were "gone again" and began walking toward [Petitioner's] home.
>
> Evans testified that when Mr. Fairley emerged from [Petitioner's] home he had a bag of drugs and said "I told you he took my shit" and that "he should have F'd him up." [Petitioner] came out of the house and a confrontation ensued. Evans stated that Mr. Fairley walked away, then turned around and stated "Don't even worry about it. I got you. I got you tonight." He testified that [Petitioner] then "pulled his gun out" and shot about four or five times. Mr. Fairley then passed out on the corner of the street.

**Tyrone Bailey, eyewitness.**

Tyrone Bailey was identified as a State's eyewitness in this case. Two months prior to trial, the State sent the defense *Brady* material informing the defense by letter that Bailey now claimed that his statement had been based on what he had been told to say by Keith Evans.

Tyrone Bailey lived across the street from [Petitioner] and also knew [Petitioner] from prior incarcerations. Bailey testified that the area where the incident took place was known for shootings, which occurred "every night."

Bailey testified to witnessing the argument between [Petitioner] and Mr. Fairley. His testimony indicated that he did not know Mr. Fairley's name until he read the newspaper. During the argument, he heard Mr. Fairley threaten [Petitioner], saying "when the sun go down, I'll be back." Although Bailey testified that, "[Petitioner] just pulled out a gun and started shooting," his later testimony indicated he only heard the shots.

Defense counsel elicited testimony from Bailey that he knew Evans, but did not further question Bailey regarding the State's disclosure that Bailey was testifying according to what Evans told him to say. Bailey testified that he knew Evans "from the program," a reference to a Department of Corrections drug treatment program. Bailey saw Evans at the scene of the shooting, standing across the street from where shots were fired. He reiterated that although he heard shots, he "didn't see [the gun] come out." He heard the shooting while proceeding to a store and his back was to the argument.

(D.I. 28-20 at 14-17).

As previously discussed, Bailey's testimony did not amount to perjury. *See supra* at Section A. In addition, the record reveals that defense counsel effectively cross-examined Bailey and Evans, and argued the points made on cross-examination in his closing argument to the jury. Given these circumstances, Petitioner has failed to demonstrate that defense counsel's performance was deficient or that he was prejudiced by defense counsel's cross-examination of Bailey and Evans.

### 5. Claim Thirteen: Counsel did not obtain an expert to support the justification defense

In Claim Thirteen, Petitioner contends that defense counsel provided ineffective assistance by failing to subject the State's scientific evidence to meaningful adversarial testing through the use of an expert who would have supported his justification defense. This argument is unavailing, because Petitioner cannot demonstrate that he was prejudiced by the absence of an expert. Petitioner admitted killing the victim, and his defense at trial was whether he reasonably believed that the killing was justified. The evidence simply did not support his defense. The police responded to the scene of the murder within minutes of the shooting. The victim had been shot in the back and side by a .45 caliber handgun, and four .45 caliber shell casings were recovered from the scene. Police also found several 9 mm casings at the scene. According to the ATF examiner's report, the 9 mm casings were fired from the same gun, yet all but one of the 9 mm casings were damaged and could not have been recently fired. Indeed, Petitioner's trial counsel argued that the remaining 9 mm casing was evidence that the victim fired first. There was, however, no weapon found on or near the victim's body, and eyewitnesses to the shooting did not see the victim possess or fire a gun. Given this record, Petitioner cannot demonstrate that additional expert testimony would have been of any benefit to him, much less, that it would have changed the outcome of the proceedings.

### 6. Claim Fourteen: Counsel failed to expose the State's knowing use of perjured testimony

Petitioner contends that defense counsel was ineffective for failing to expose Bailey's trial testimony as perjury under cross-examination, because Bailey recanted his initial statement to the police prior to trial but testified consistently with his initial statement. As previously explained, Bailey's testimony did not amount to perjury. *See supra* at Section A. Consequently, defense counsel did not provide ineffective assistance by failing to expose non-existent perjury.

To the extent Petitioner asserts defense counsel could have more effectively cross-examined Bailey by using the recantation, he has not alleged or demonstrated a reasonable probability that such cross-examination would have changed the result of the proceeding.

### 7. Claim Fifteen: Counsel did not object to trial court's response to jury note

In Claim Fifteen, Petitioner asserts that defense counsel provided ineffective assistance by failing to object to the Superior Court's response to a note requesting clarification of terms that are not defined by state statute. The Superior Court initially instructed the jury as follows:

> "Cruel" refers to the malicious infliction of physical suffering upon a human being. "Depraved" refers to a mind that has ceased to care for human life. The word "wicked" describes a bad or evil morality.

(D.I. 28-15 at 57).

During deliberations, the jury sent a note to the Superior Court requesting further clarification of the words cruel, wicked, and depraved. In response, the Superior Court instructed the jury as follows:

> Now, ladies and gentlemen, the three words just mentioned are not defined in the criminal code. When words are not defined in the code, the jury is to give the words their commonly accepted meanings. The instructions give you some sense of their meaning, but beyond that you should give the words their commonly accepted meanings. There is no further clarification for me to give you.

(D.I. 28-15 at 55).

Petitioner argues that defense counsel should have objected to the Superior Court's response to the jury note. His argument, however, lacks merit, because the Superior Court's response was the only permissible answer to the jury's request. The words "cruel, wicked, and depraved" are not defined in the Delaware Code, and 11 Del. C. § 221 actually provides that words not defined in the code be given their commonly accepted meaning. As the Delaware

Supreme Court has noted, "the words 'cruel, wicked, and depraved indifference to human life' are words with a commonly accepted meaning, time honored in this State's jurisprudence." *Waters v. State*, 443 A.2d 500, 506 (Del. 1982). Because objecting to the Superior Court's response to the jury's note would have been asking the court to disregard Delaware state law and Delaware Supreme Court precedent, it is reasonable to conclude that the Superior Court would have denied any objection or request for an alternative clarification. Given these circumstances, defense counsel's actions were professionally reasonable and Petitioner cannot demonstrate prejudice.

### 8.    Claim Sixteen: Defense counsel did not request a missing evidence instruction

In Claim Sixteen, Petitioner contends defense counsel should have requested the Superior Court to dismiss his charges or have requested a missing evidence instruction because the police did not test the victim's hands or clothes for gunshot residue. Petitioner asserts that such evidence, if collected, would have supported his justification defense.

This argument lacks merit. As previously discussed, aside from Petitioner's testimony, there was no evidence that the victim possessed or fired a gun. Without a weapon to match, the police were not obligated to test for gunshot residue, and tests such as firearm proximity through gunshot residue could not have been performed on the victim's clothing. The medical examiner testified that he did not notice any gunshot residue on the victim's hands. In addition, defense counsel explained that it was his understanding that gunshot residue pressure tests had been deemed legally or forensically unreliable when performed on a victim's hands in certain circumstances. (D.I. 28-15 at 26). Given all of these circumstances, defense counsel did not perform deficiently by not requesting dismissal or a missing evidence instruction. Petitioner also

cannot demonstrate prejudice, because he cannot demonstrate a reasonable probability that dismissal or a missing evidence instruction would have been granted.

### 9. Claim Seventeen: Defense counsel did not ask for self-defense instruction for second degree murder and manslaughter

Next, Petitioner argues that defense counsel was ineffective for failing to request a self-defense instruction for the lesser-included offenses of second degree murder and manslaughter. The trial transcript, however, reveals that the Superior Court instructed the jury on self-defense for first degree murder and the lesser-included offenses of second degree murder and manslaughter, stating:

> **A defense raised by the defendant in this case against the charge of murder in the first degree and the lesser-included offenses thereunder is justification.** The Delaware Code defines this defense as follows: The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion.

(D.I. 28-5 at 15) (emphasis added). Because the Superior Court did instruct the jury that the defense of justification (i.e., self-defense) applied to the offenses of second degree murder and manslaughter, Petitioner cannot demonstrate that he was prejudiced by defense counsel's actions with respect to a self-defense instruction.[7] Given Petitioner's failure to demonstrate prejudice, the Court will deny Claim Seventeen as meritless.

---

[7] The Court acknowledges that Claim Seventeen may be based on Petitioner's misunderstanding about the self-defense instruction counsel actually requested. Petitioner contends that "it was for the jury to decide whether they believed Petitioner's belief was held recklessly or not, thus applying justification to that particular charge." (D.I. 36 at 28). That, however, is exactly what defense counsel requested when he asked the Superior Court to use the following imperfect self-defense instruction: "when an actor subjectively but recklessly forms a belief that deadly force is necessary for self-protection, he may be found 'guilty' of manslaughter, but must be found 'not guilty' of murder in the first or second degree." (D.I. 28-5 at 111; *see also* D.I. 28-5 at 96-100). In fact, in his Motion for New Trial, defense counsel actually stated that the "question

whether [Movant's belief that Fairley was armed] was reasonably held or recklessly held should have been left to the jury to decide based on an instruction which correctly stated the law." (D.I. 28-5 at 99).

Nevertheless, on habeas review, the Court must focus on Petitioner's stated argument – that defense counsel did not request a self-defense instruction. This argument is meritless, as aptly explained by the State in Petitioner's second post-conviction appeal:

> Trial counsel objected to lesser-included offenses altogether, arguing instead that an imperfect self-defense instruction would be more appropriate. Trial counsel argued that a reckless belief (imperfect defense) was not the same as a reckless killing. As a result, trial counsel submitted a proposed jury instruction regarding [Petitioner's] subjective state of mind. The trial court rejected counsel's proposed instruction (but the court agreed to insert the word "subjectively" into the instruction), and instructed the jury on the lesser-included offenses of Murder in the Second Degree and Manslaughter**. The trial court also instructed the jury on justification – the use of self-defense in self-protection. The court instructed the jury that the justification defense applied to the lesser-included offenses as well as to the first degree murder charge.** ("A defense raised by the defendant in this case against the charge of murder in the first degree *and the lesser-included offenses thereunder* is justification." (emphasis added)). Trial counsel could hardly have performed outside the wide range of reasonable representation by failing to request that the judge instruct the jury that the justification defense applies to the lesser-included offenses. Because the trial court instructed the jury on justification for the lesser-included offenses, [Petitioner's] claim has no support in the record and cannot be sustained.

> Moreover, trial counsel filed a motion for new trial a week after [Petitioner's] trial, rearguing the imperfect self-defense jury instruction. The State responded; and the Superior Court denied [Petitioner's] motion. The issue was raised on direct appeal as a claim challenging the trial court's decision to instruct the jury on the lesser-included offenses. [Petitioner] cannot establish either deficient performance or resulting prejudice. His claim fails on the merits.

*Coles v. State*, 2017 WL 1247212, at *20-22 (Del.) (emphasis added).

### 10. Claim Eighteen: Defense counsel did not discuss pre-sentence report or present mitigating mental health factors

In Claim Eighteen, Petitioner contends that defense counsel did not review the presentence report with him or present evidence of his history of emotional and physical abuse, and mental illness, as mitigation at sentencing. In his Rule 61 affidavit, defense counsel explains that Petitioner "never discussed his mental status or emotional problems [] as a possible mitigating factor." (D.I. 28-46 at 122). As defense counsel did not have a basis for perceiving a need to investigate any purported mental or emotional health issue, defense counsel did not perform deficiently in not investigating or presenting such information at sentencing. In turn, although defense counsel states in his Rule 61 affidavit that he could not recall if he provided Petitioner with a copy of the presentence report, Petitioner has not demonstrated a reasonable probability that the result of his sentencing would have been different but for defense counsel's failure to do so. For these reasons, the Court will deny Claim Eighteen as meritless.

### G. Claims Nineteen through Twenty-four: Ineffective Assistance of Appellate Counsel

In Claims Nineteen through Twenty-Four, Petitioner asserts that appellate counsel were ineffective for failing to raise the following claims on direct appeal: (19) the State violated *Brady* by destroying exculpatory evidence (*i.e.*, gunshot residue evidence that was never collected); (20) the State engaged in prosecutorial misconduct by using Bailey's perjured testimony; (21) the Superior Court failed to issue a missing evidence instruction; (22) the Superior Court did not respond correctly to the jury note regarding the definition of some terms in the instructions; (23) the Superior Court provided an incorrect self-defense jury instruction; and (24) the Superior Court failed to give a self-defense jury instruction for the lesser-included offenses.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir.

2004).  An appellate counsel's decision regarding which issues to raise on appeal is strategic,[8] and appellate counsel is not required to raise every possible non-frivolous issue.  *See Smith v. Robbins*, 528 U.S. 259, 288 (2000).  As a general rule, the presumption of effective assistance of appellate counsel will be overcome "only when ignored issues are clearly stronger than those presented."  *Smith*, 528 U.S. at 285.  In order to establish prejudice, a movant must show a reasonable likelihood that the Court of Appeals would have resolved the case differently on appeal, if not for counsel's deficiencies.  *See United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

As previously discussed, the five claims of trial court error which provide the basis for the instant appellate counsel ineffective assistance allegations lack merit.  Therefore, Petitioner cannot demonstrate a reasonable probability that the outcome of his direct appeal would have been different but for appellate counsel's failure to raise the errors on direct appeal. Accordingly, the Court will deny as meritless Claims Nineteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three, and Twenty-Four.

### H.        Claim Twenty-Five:  Cumulative Error

In his final Claim, Petitioner contends that his allegations regarding defense counsel's and appellate counsel's ineffective assistance "had a cumulative and prejudicial effect on the proceedings."  (D.I. 3 at 40).

The United States Supreme Court has not recognized the concept of cumulative error. *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019).   As there is no clearly

---

[8]        *See Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) ("One element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise.").

established Federal law with respect to a cumulative error argument, it would appear that the Court's analysis is over and Petitioner is not entitled to habeas relief for Claim Twenty-Five.

The Third Circuit, however, has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.* 742 F.3d 528, 542 (3d Cir. 2014). Pursuant to the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Fahy v. Horn,* 516 F.3d 169, 205 (3d Cir. 2008). With respect to ineffective assistance of counsel claims, "cumulative review is proper under *Strickland*, "only after the petitioner's claims "surmount the first prong of the *Strickland* analysis." *Pursell v. Horn*, 187 F. Supp. 2d 260, 363 (W.D. Pa. 2002). In other words, the attorney's performance must be found to be deficient on the individual claims of error before the errors can be aggregated to demonstrate prejudice.

As an initial matter, it appears that Petitioner did not present the instant cumulative error argument to the Delaware Supreme Court in either of his Rule 61 appeals. Therefore, Claim Twenty-Five is procedurally defaulted and, given Petitioner's failure to establish cause and prejudice, or a miscarriage of justice, the Court concludes that the Claim is procedurally barred from federal habeas review.

Nevertheless, the Court alternatively denies Claim Twenty-Five as meritless. As previously discussed, the Court has also concluded that Petitioner's ineffective assistance allegations concerning both defense and appellate counsel lack merit and did not cause any

prejudice. Because Petitioner has not demonstrated "actual prejudice" even when the fifteen Claims are considered together, the Court will deny Claim Twenty-Five as meritless.

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.